MYERS, J.,
for the court.
¶ 1. The dispute arises from an inter-pleader action. After certain property was sold and funds distributed to the priority lienholder, there were insufficient funds to pay all the junior hens. The remaining funds, totahng $16,377.68, were paid into the court and the court distributed the funds according to its determination of priority. Tally Arms Condominium Association, Inc. (Tally Arms) claimed $14,242.60 plus attorneys fees and costs of at least $2,000. Whitney National Bank (Whitney) claimed $27,892.22. Tally Arms was awarded $1,681.00, and Whitney was awarded $14,696.63. Tally Arms appeals the decision asserting:
THE TRIAL COURT ERRED IN DETERMINING THAT TALLY ARMS SUBSEQUENT LIENS OF ASSESSMENT DID NOT HAVE PRIORITY OVER WHITNEY’S LIEN.
STATEMENT OF FACTS
¶ 2. Norman Breland was a condominium owner. On June 2,1992, Norman Bre-land executed a deed of trust on his condominium in favor of Deposit Guaranty for a $48,000 loan. On November 13, 1995, Tally Arms filed a condominium assessment for $1,681, which included language concerning additional interest, costs, attorneys fees, and accrual of successive unpaid monthly assessments against Breland’s condominium.
¶ 3. On January 26, 1996, Tally Arms sued Breland in justice court seeking $2,317 in unpaid assessments but not seeking foreclosure. On February 26, 1996, a default judgment in favor of Tally Arms against Breland for $2,317 plus $50 court costs was entered in justice court. Bre-land appealed to county court on March 20, 1996. Tally Arms filed a declaration action on April 24, 1996, still without seeking judicial foreclosure.
¶ 4. On July 26, 1996, a second deed of trust from Breland was executed, this time in favor of Merchants Bank for $23,000. This deed of trust was recorded on August 20,1996.
¶ 5. On November 12, 1996, Tally Arms filed a one year extension of the original $1,381 lien and added an additional filing of $2,364 for later assessments and costs. On January 17, 1997, Tally Arms filed a motion in the circuit court action against Breland to amend the complaint in order to seek foreclosure. The circuit court allowed the amended complaint on June 5, 1998. In each of the following years,1997, 1998, 1999, and 2000, Tally Arms filed assessments for the prior years.
¶ 6. On May 4, 2001, MERSI and Shapiro and Massey, which had taken over the first deed of trust from Deposit Guaranty, foreclosed on the condominium. The sale brought $69,000, leaving only $16,377.63 for junior lienholders after MERSI’s deed *30 of trust and sale costs were paid. MERSI and Shapiro and Massey petitioned to pay the money into the court by interpleader. MERSI and Shapiro and Massey are now no longer part of the action. Whitney, the successor to Merchants Bank’s deed of trust received $14,696.63 and Tally Arms received $1,681.00.
LEGAL ANALYSIS
¶ 7. This ease turns on the interpretation of Mississippi Code Annotated Section 89-9-21 (1972). It reads in part:
The amount of any such assessment plus any other charges thereon, such as interest, costs, attorneys’ fees, and penalties, as such may be provided for in the declaration of restrictions, shall be and become a lien upon the condominium assessed when the management body causes to be recorded in the office of the chancery clerk of the county in which such condominium is located a notice of assessment, which shall state the amount of such assessment and such other charges thereon as may be authorized by the declaration of restrictions, a description of the condominium against which the same has been assessed, and the name of the record owner thereof.... Such lien shall be prior to all other liens recorded subsequent to the recordation of said notice of assessment except that the declaration of restrictions may provide for the subordination thereof to any other liens and encumbrances. Unless sooner satisfied and released, or the enforcement thereof initiated as hereafter provided, such lien shall expire and be of no further force or effect one year from the date of recordation of said notice of assessment; provided, however, that said one-year period may be extended by the management body for a time not to exceed one additional year by recording a written extension thereof.
¶ 8. The condominium assessment lien is valid for one year unless enforcement is initiated or a one year extension is filed. Tally Arms properly filed the one year extension prior to the expiration of the one year lien. Tally Arms’s original lien was filed in November 1995 and was renewed in November 1996. This gave Tally Arms until November 1997 to initiate foreclosure. By the January 17, 1997 request to amend the complaint against Breland to seek foreclosure, Tally Arms properly initiated foreclosure, even though the request was not granted till June 1998. Pursuant to Mississippi Rules of Civil Procedure 15, the granting of the motion to amend a pleading allows the amended pleading to relate back to the original pleading. Thus, Tally Arms initiated foreclosure proceedings prior to the expiration of the one year extension of the condominium lien.
¶ 9. While we agree with Tally Arms that it did seek foreclosure prior to the expiration of the lien, we disagree with its argument that it is entitled to more than its original lien amount. The tidal court found no authority that allows a condominium assessment to include language that could encompass all later unfiled assessments. Tally Arms fails to direct us to any authority that allows such additions for condominium liens. While the argument that the filing need only give notice is interesting, the statute is specific in what the hen filing shah state. Accordingly, we affirm.
¶10. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
KING, P.J., BRIDGES, CHANDLER AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, *31 JOINED BY MCMILLIN, C.J., LEE AND IRVING, JJ., THOMAS, J., NOT PARTICIPATING.